**Bennie DANIELS, Plaintiff,**

v.

**James AIKENS, et al., Defendants.**

**Cause No. S90–266.**

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 16, 1991.

240

Bennie Daniels, pro se.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the defendants' motion to dismiss or for summary judgment filed pursuant to Rule 56, Fed.R.Civ.P. They supported their motion with a memorandum, affidavit, and other evidence. The plaintiff, Bennie Daniels, replied and submitted his own affidavit and exhibits in support. The defendants submitted a reply. Because the defendants have met their burden of showing the absence of a material factual dispute and their entitlement to judgment as a matter of law, and Mr. Daniels has not met his burden of demonstrating the existence of a genuine issue of material fact, the court concludes that summary judgment for the defendants should be granted.

Mr. Daniels, an inmate of the Indiana State Prison, brought this *pro se* complaint under 42 U.S.C. § 1983. He alleges that the defendants, in their individual capacities, violated his Fifth and Fourteenth Amendment due process rights when they transferred him without notice or hearing on March 12, 1990 from a lower-security assignment at the Lakeside Correctional Unit ("LCU"), or K–Dormitory, to maximum security at the Indiana State Prison. He seeks reinstatement in LCU, a mandate to comply with Executive Order # 89–1, and $20,000.00 in damages from each defendant. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

The defendants, officials of the Indiana Department of Correction, assert that Mr. Daniels possesses no liberty interest in residing in a particular institution, and that the Fourteenth Amendment therefore does not require that any notice of transfer or hearing is constitutionally required. They submitted the affidavit of Norman G. Ow-ens, director of the classification division of the Department of Correction. Mr. Owens provided a copy of the current "Criteria for Consideration for Offender Assignment, Security Level–2", effective February 1, 1990. Pursuant to those criteria, offenders previously housed at LCU were reviewed, and if found ineligible, were reassigned to an institution with an appropriate security level. Mr. Owens states that Mr. Daniels' reassignment was based solely upon the fact that he no longer met the criteria for assignment to LCU and the transfer was not based upon institutional conduct or misconduct. Mr. Owens also provided a copy of the classification hearing report of Mr. Daniels which recommended his transfer and stated as a basis for that decision "executive decision to I custody." The "executive decision" is the implementation of the attached criteria, and "I custody" means "in" as opposed to "out of" custody.

Mr. Daniels, in response, proffered his own affidavit, copies of Executive Orders # 89–20 and # 90–1, the criteria for consideration for offender transfer to K–Dorm, Indiana State Prison, the criteria for consideration for offender assignment, security level–2, some excerpts from Volume II of the manual of policies and procedures concerning custody, security, and control, dated August 6, 1974, and copies of IND. CODE 11–10–1–1 to 7, 11–10–2–1 and 2.

## I. The Summary Judgment Standard

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America,* 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation,* — U.S. —, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v.*

*Mulcahy,* 902 F.2d 524, 540 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Tatalovich v. City of Superior,* 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Hines v. British Steel Corp.,* 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Baucher v. Eastern Indiana Production Credit Ass'n,* 906 F.2d 332, 334 (7th Cir.1990).

■ The parties cannot rest on mere allegations in the pleadings, *Koclanakis v. Merrimack Mut. Fire Ins. Co.,* 899 F.2d 673, 675 (7th Cir.1990), or upon conclusory allegations in affidavits. *Mestayer v. Wisconsin Physicians Service Ins. Corp.,* 905 F.2d 1077, 1079 (7th Cir.1990). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Illinois Bell Telephone Co. v. Hanes and Co., Inc.,* 905 F.2d 1081, 1087 (7th Cir. 1990), as long as the inferences are reasonable. *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir.1990). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989).

## II. The Transfer

Mr. Daniels argues that (1) the Fourteenth Amendment provides him a protectable liberty interest in residing in a particular institution, entitling him to notice and a hearing before transfer, and (2) the prison regulations and Indiana statutes have created a protectable liberty interest in not being transferred without due process. Both arguments fail.

### A.

■ The defendants argue that the Due Process Clause does not afford Mr. Daniels a protectable interest in not being transferred from one prison institution to another. The law supports their position.

A transfer from one prison to another does not deprive the prisoner of liberty or property within the meaning of the due process clause, and therefore does not require notice and an opportunity for a hearing. *See, e.g., Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Caldwell v. Miller, supra,* 790 F.2d [589] at 603 [ (7th Cir. 1986) ].

*Bruscino v. Carlson,* 854 F.2d 162 (7th Cir.1988), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989). Mr. Daniels has no liberty interest in not being transferred to a maximum security assignment without notice and a hearing.

### B.

■ Mr. Daniels' second argument is more complex, but equally unavailing. The Supreme Court in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), held that the Due Process Clause does not, itself, give rise to a liberty interest in remaining out of segregation. 459 U.S. at 468, 103 S.Ct. at 869–70. In so doing, the court recognized that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests. 459 U.S. at 467, 103 S.Ct. at 869. Indeed, the court has repeatedly "rejected the notion 'that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to involve the protections of the Due Process Clause.'" *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989), *quoting Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (emphasis in *Meachum* ). Thus, the Court in *Hewitt* observed that "as long as the conditions or degree of confinement to which the prisoner is subjected is within

the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not, in itself, subject an inmate's treatment by prison authorities to judicial oversight." 459 U.S. at 468, 103 S.Ct. at 869, *quoting Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). *See Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980); *Russ v. Young,* 895 F.2d 1149 (7th Cir.1989); *Cain v. Lane,* 857 F.2d 1139 (7th Cir.1988); *Williams v. Faulkner,* 837 F.2d 304 (7th Cir.1988); *Shango v. Jurich,* 681 F.2d 1091, 1098 (7th Cir.1982).

■ Although Mr. Daniels cannot claim a liberty interest arising from the Due Process Clause itself, the Supreme Court has recognized that "state statutes may create liberty interests that are entitled to the procedural protections [of the Due Process Clause]." *Vitek v. Jones,* 445 U.S. at 488, 100 S.Ct. at 1261. To create a constitutionally protected liberty interest, the state must employ "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed ... and that administrative segregation will not occur absent specific substantive predicates—viz. 'the need for control' or 'the threat of a serious disturbance.'" *Hewitt v. Helms,* 459 U.S. at 471–72, 103 S.Ct. at 871; *see Colon v. Schneider,* 899 F.2d 660 (7th Cir.1990). Thus, a state may create a liberty interest only where the statute or regulation in question contains "specific directives to the decision-maker that if the regulations' substantive predicates are present, a particular outcome must follow...." *Kentucky Department of Corrections,* 109 S.Ct. at 1910. *See Williams v. Faulkner,* 837 F.2d at 309; *Russ v. Young,* 895 F.2d at 1153; *Shango v. Jurich,* 681 F.2d at 1100. "The test for whether a statutory or regulatory procedure creates a protectable due process interest, then, hinges on the actual language used by the legislature or agency." *Cain v. Lane,* 857 F.2d at 1144.

Mr. Daniels maintains that the State of Indiana has created an enforceable liberty interest through IND.CODE 11–10–1–6 and Rules IV and V of Volume II of the Department of Correction's manual. IND. CODE 11–10–1–6 provides:

The department shall, at least annually, review, in accord with sections 2 and 3 [11–10–1–3] of this chapter, every committed offender not on parole to determine the appropriateness of his current classification and assignment and to make a classification-assignment decision based upon that review. Before making a classification-assignment decision the department shall interview the offender, discuss with him the information on which the decision will be based, and allow him to challenge that information and present pertinent information of his own. The department shall promptly notify the offender, in writing, of its classification-assignment decision and the reasons for it. [IC 11–10–1–6, as added by Acts 1979, P.L. 120, § 3.]

Mr. Daniels appears to suggest that the requirement of periodic reviews in this portion of the statute provides him with a constitutionally protected liberty interest in receiving such reviews. However, it is well-established that one cannot have a property or liberty interest in mere procedures because:

Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Olim v. Wakinekona,* 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). *See Doe by Nelson v. Milwaukee County,* 903 F.2d 499, 503 (7th Cir.1990) (no property interest found in the mere establishment of procedures); *Colon v. Schneider,* 899 F.2d at 670 n. 16 (state's creation of procedural guidelines does not give rise to a legitimate claim of entitlement that the procedures be followed); *Shango v. Jurich,* 681 F.2d at 1100–01 ("The argument that the procedures established by the regula-

tion can themselves be considered a liberty interest is analytically indefensible ... even if [the] regulation provided a right to a hearing ..., that procedural right is not accorded federal due process protection."). The statute merely calls for periodic review of offenders' classification and assignment. The establishment of such a review procedure, however, cannot itself give rise to a protected liberty interest. The defendants, therefore, are entitled to summary judgment on Mr. Daniels' due process claims.

### III. Conclusion

Although he responded to the summary judgment motion, Mr. Daniels has failed to satisfy his burden of coming forth with evidence sufficient to withstand a motion for directed verdict, as required by *Celotex*, *Liberty Lobby*, and *Matsushita*. He has not demonstrated a liberty interest protected by the Due Process Clause. Accordingly, the record before the court shows no genuine issue of material fact and the defendants are entitled to judgment as a matter of law.

For the foregoing reasons, the court now GRANTS the defendants' motion for summary judgment.

SO ORDERED.